

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

Hon. Clinton Owsley, Director
Gas Utilities Division
Railroad Commission of Texas
Austin, T e x a s

Dear Sir:

Opinion No. O-1715
Re: The Railroad Commission of Texas has
jurisdiction to require the filing of
annual reports on the part of Texoma
Natural Gas Company.

In response to your letter of November 18,
1939, and subsequent verbal information herein reflect-
ed, we are of the opinion that the Railroad Commission
of Texas has jurisdiction pursuant to Article 6056, Re-
vised Civil Statutes, 1925, to require annual reports
of the Texoma Natural Gas Company.

We are informed that this company distributes
gas from its gathering lines to drilling contractors,
private dwellings and to a warehouse. In respect to
these sales the company is a utility and undoubtedly
the Railroad Commission has both rate making jurisdic-
tion, and jurisdiction to require annual reports of it.

While it has been your practice to require
reports of this company, you cite the ruling of the
Supreme Court of Texas in the case of HUMBLE OIL & RE-
FINING CO., et al vs. RAILROAD COMMISSION OF TEXAS, et
al, 133 S.W. (2d) 9, as cause for doubt as to the jur-
isdiction of the Commission in this regard. In the
event the Texoma Natural Gas Company should not be
classed as a utility, we shall consider whether the leg-
islature has nevertheless conferred jurisdiction over
it, a mere producer of gas, to require annual reports.
Quoting from the case:

"Articles 6053 and 6054 are the statutes
which directly define the jurisdiction of the

Commission with regard to rate making * * *
when the two are read together, it is evident
that both are dealing with rate making as re-
gards to pipe lines."

"When Articles 6053 and 6054, supra, are
read either together or separately they demon-
strate beyond any doubt that the rate making
jurisdiction of the Commission has not been
extended to cover mere producers of gas who
sell their product at the point of origin."
128 S.W. (2d) at p.p. 14 and 15. (Underscor-
ing ours).

The court clearly holds that rate making jur-
isdiction as to "mere producers" has not been conferred
upon the Commission, except that such producer be a
part of an integrated enterprise under a single control
engaged also in distribution of gas to the public. Other
statutes dealing with jurisdictional matters were not
considered by the court. The opinion, therefore, does
not purport to control the question before us regarding
the jurisdiction of the Commission to require annual
reports of a "mere producer". However, Article 6055
makes a requirement of "such pipe lines" to file reports
as the Commission may deem pertinent. The question then
is whether a mere gas producer, such as Texoma, is a
pipe line within the contemplation of this statute. We
believe it is. While it has been held not to be a util-
ity, the mere producer clearly exercises functions de-
fined to be that of a pipe line. Article 6051 provides:

"Art. 6051. MAY ENJOIN GAS PIPE LINE
The operation of gas pipe lines for buying,
selling, transporting, producing or otherwise
dealing in natural gas is a business which in
its nature and according to the established
method of conducting the business is a monopoly
and shall not be conducted unless such gas pipe
line so used in connection with such business
be subject to the jurisdiction herein conferred
upon the Commission. The Attorney General
shall enforce this provision by injunction or
other remedy."

Hon. Clinton Owsley, Director, page 3

Article 6056 provides:

"Art. 6056. OPERATOR'S REPORTS
The Commission may require of all persons or corporations operating, owning or controlling such gas pipe lines sworn reports of the total quantities of gas distributed by such pipe lines and of that held by them in storage, and also of their source of supply, the number of wells from which they draw their supply, the amount of pressure maintained, and the amount and character and description of the equipment employed, and such other matters pertaining to the business as the Commission may deem pertinent."

The Supreme Court recognizes the necessity under the statute for the Commission to inquire into the price of the gas sold to the utility. While the seller, if a mere producer, cannot be regulated, from the standpoint of rate making, nevertheless the purchasing utility may be directed not to charge more upon its books than a reasonable price. In that event the utility would, of course, absorb the excess price found to be paid to the producer, and would be prohibited from passing it on to the public. However, in making a determination of the reasonableness of the price, the Commission would necessarily have to inquire into the contracts, books and records of the producer. In this connection the court clearly infers that the consumer will not have to pay a "burner tip" rate embracing an unreasonable "well head" or production price for the gas:

"At this point we pause to call attentention to the fact that our holding to the effect that the Commission is without jurisdiction to tell a mere gas producer what price he must charge for his product when sold on the premises of production to a public gas utility does not mean that the Commission, in all instances and under all circumstances, in fixing gas utility rates, must allow the gas utility affected full credit for the purchase

price of the gas purchased by it. In regard
to that matter, we think that, in fixing gas
utility rates, it is not only the power but
the duty of the Commission to inquire into
the reasonableness or unreasonableness of the
gas utility gas contracts. Western Distribut-
ing Company vs. Public Service Comm. 285 U. S.
119, 78 L. Ed. 655; Smith vs. Illinois Tele-
phone Co., 282 U. S. 133, 75 L. Ed. 255."

Article 6053 referred to by the court as
defining rate making jurisdiction of the Railroad
Commission specifically delegates the duty upon the
Commission, in line with the suggestion of the court
contained in the quotation from its opinion above, to
"establish a fair and equitable division of the pro-
ceeds of the sale of gas between the companies trans-
porting or producing the gas and the companies distri-
buting or selling it". In addition to our belief that
the producer of gas has been included specifically
as a "pipe line" within the contemplation of the
statute, requiring reports, we believe also it exists
as an implied power. The Commission, of course, would
be powerless to exercise this duty, except that it
have power to require reports on its business activi-
ties. The power to require reports is therefore implied
as incident to the primary power expressly given to
the Commission to equitably divide proceeds between
the producer and the distributor. It is true that a
primary power such as rate making cannot be implied:

"It seems to be argued that our gas
utility statutes, by necessary implication,
confer the power on the Commission to fix the
price of gas where it is sold by the producer
on the premises of production to a public gas
utility. We think that the power to fix
prices and make rates by a board or commission
is not to be taken as conferred by implication.
Such power must be conferred under statutory
or constitutional language that is free from
doubt, and that admits of no other reasonable
construction." 128 S.W. (2nd) at page 11.

In other words the Railroad Commission in exercising its express power to fix rates for gas to be charged by a distributing utility must also effectually exercise the express duty conferred upon it to make an equitable division between the "mere producer" on the one hand and the distributor or seller on the other hand. Collateral to this latter express jurisdictional power is the necessarily implied power to require annual reports from the mere producers of gas. There are many distributing companies in Texas who purchase their gas from mere producers of gas. Most of the latter come within the jurisdiction of the Commission as part of an integrated system engaged in all phases of production transportation and distribution. However, some of them are not thus "associated", as the court described it in the Humble case above discussed, and except that the Commission have the power to require reports of them, its rate making jurisdiction would be rendered impotent as to the distributors to whom said producers sell the gas.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Hug. R. Buck*

Hugh A. Buck
Assistant

APPROVED APR 4, 1940

HB:ob

FIRST ASSISTANT
ATTORNEY GENERAL